UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ENCORE INDUSTRIES, INC.,**

    **Plaintiff,**

v.

**TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,** *et al.***,**

    **Defendants.**

Case No. 2:24-cv-875
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff Encore Industries, Inc.'s Motion for Judgment on the Pleadings (Encore Mot., ECF No. 19), Defendant Travelers Property Casualty Company of America's Cross Motion for Judgment on the Pleadings (Travelers Mot., ECF No. 20), and Defendant American Guarantee & Liability Insurance Company's ("AGLIC") Cross Motion for Judgment on the Pleadings (AGLIC Mot., ECF No. 21). Encore contends Travelers and AGLIC (the "Insurers") are required to indemnify Encore, which is an insured party under policies issued by the Insurers, for Encore's intentional tort liabilities arising from a state court lawsuit. The Insurers have refused to indemnify Encore, relying on a provision in the applicable insurance contracts that coverage is excluded for liabilities arising from "bodily injury directly intended by [Encore]." (Fed. Compl., ECF No. 1, ¶ 28; Travelers Policy, ECF No. 1-1, PageID 31.)

The Parties' motions turn on one central issue: Under Ohio Revised Code ("O.R.C.") § 2745.01, is a showing of "direct intent" to cause bodily harm always required to trigger an employer's liability for intentional torts? Or does the statute authorize employer liability for anything less than direct intent? For the reasons that follow, the Court agrees with the Insurers

that, under Ohio law, a showing of "direct intent" (or its legal equivalent) is always required for an employer to be liable for intentional torts against an employee under O.R.C. § 2745.01. Therefore, pursuant to Encore's insurance contracts with the Insurers, Encore is not entitled to indemnification from the Insurers for its state court liabilities relating to O.R.C. § 2745.01.

Accordingly, this Court **DENIES** Plaintiff Encore's Motion for Judgment on the Pleadings (ECF No. 19), **GRANTS** Defendant Travelers' Cross Motion for Judgment on the Pleadings (ECF No. 20), and **GRANTS** Defendant AGLIC's Cross Motion for Judgment on the Pleadings (ECF No. 21). Encore's claims against the Insurers are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

The facts underlying this lawsuit are tragic. On November 17, 2021, Encore employee Todd Shaffer attempted to clear a jam in the conveyer of a thermoforming trim press machine while at work at Encore's plastics facility in Cambridge, Ohio. (State Compl., ECF No. 1-3, ¶¶ 14, 80–83.) While he was fixing the machine, the conveyor activated, trapping Mr. Shaffer's head and neck, crushing his throat, and triggering cardiac arrest. (*Id.*, ¶ 84–85.) He suffered great pain and died from "traumatic asphyxia and crush injuries to the neck and torso." (*Id.*, ¶¶ 86–89.)

Mr. Shaffer's wife and children sued Encore and other defendants in the Franklin County Court of Common Pleas. (*See* State Compl.); *Shaffer v. Encore Industries, Inc.*, Franklin C.P. No. 22CV007990 (Nov. 25, 2024). The Shaffer family alleged that Encore "acted with the intent to injure Mr. Shaffer and/or with the belief that his injury was substantially certain to occur," citing O.R.C. § 2745.01. (State Compl., ¶ 98.) Specifically, they claimed that Encore directed Mr. Shaffer "to bypass an interlocked safety guard, ignore federally and state mandated safety precautions and to further bypass a barrier guard to work in the eject conveyor with the equipment safety guard intentionally removed by Encore Plastics, ultimately resulting in his death." (*Id.*, ¶ 99.)

2

At the time of Mr. Shaffer's death, Encore was an insured party under a Travelers insurance policy held by Encore's parent company, IPL USA, Inc. (Travelers Policy, ECF No. 1-1; Fed. Compl., ¶ 9.) The Travelers Policy provides up to $1,000,000 in coverage per accident under the "Employers Liability Insurance" part of the Policy. (Travelers Policy, PageID 21; Fed. Compl., ¶¶ 10–11.) The Policy provides that Travelers "will pay all sums that [Encore] legally must pay as damages because of bodily injury to your employees," provided the injury is otherwise covered by the Policy. (Travelers Policy, PageID 22; Fed. Compl., ¶ 12.) The Policy includes a coverage exclusion specific to Ohio: "This insurance does not cover . . . bodily injury directly intended by the insured." (Travelers Policy, PageID 31; Fed. Compl., ¶ 28.) This exclusion replaces "Exclusion C.5," which provides that the Policy "does not cover . . . [b]odily injury intentionally caused or aggravated by you." (Travelers Policy, PageID 22; Fed. Compl., ¶ 27.)

Encore was also an insured party under an AGLIC insurance policy (AGLIC Policy, ECF No. 1-2) at the time of Mr. Shaffer's death. (Fed. Compl., ¶¶ 14, 16.) The AGLIC Policy covers Encore's liabilities up to $10,000,000 in excess of the Travelers Policy's $1,000,000 limit. (*Id.*, ¶ 16.) The AGLIC Policy "follows the form of the" Travelers Policy "except to the extent inconsistent with its own express terms." (*Id.*, ¶ 19.) The parties do not dispute that for all terms relevant to this case, the AGLIC Policy follows the Travelers Policy.

In the underlying state court lawsuit, the Shaffer family alleged damages against Encore exceeding $1,000,000. (*Id.*, ¶ 25.) Pursuant to the Travelers Policy, Travelers agreed to defend Encore in the state court litigation "under a full reservation of rights." (*Id.*, ¶ 24.) But, pursuant to the Ohio-specific exclusion in the Travelers Policy, both Travelers and AGLIC denied that they were obligated to indemnify Encore for any liabilities relating to Mr. Shaffer's death arising under the Ohio statute that authorizes employer liability for intentional torts, O.R.C. § 2745.01. (*Id.*,

3

¶¶ 26–35.)

As a result, Encore filed this suit against the Insurers, seeking a declaratory judgment under 28 U.S.C. § 2201 "that the Insurers have obligations to reimburse Encore, up to policy limits, for any judgment or settlement resulting from" the state court lawsuit. (Fed. Compl., ¶ 41.) Encore also alleged breach of contract, arguing both Insurers failure to honor their indemnity obligations. (*Id.*, ¶ 47.) Last, Encore alleged that the Insurers' refusal to indemnify was unreasonable and that the Insurers thus acted in bad faith regarding their contractual obligations. (*Id.*, ¶¶ 50–54.)

At a conference before the Magistrate Judge in April 2024, the Parties requested permission "to file motions for judgment on the pleadings on the issue of whether or not the Insurers' insurance policies provide indemnity coverage for the settlement of the Underlying Lawsuit." (ECF Nos. 17, 18.) The Court granted that request. (ECF No. 18.) Encore filed its Motion first (Encore Mot.), followed by Travelers (Travelers Mot.) and AGLIC (AGLIC Mot.). Encore filed a combined response to the Insurers' Motions and a reply in support of its own Motion. (ECF No. 22.) Travelers filed a reply to the combined response (ECF No. 23), and AGLIC filed its reply (ECF No. 24).

The Insurers state that Encore has settled the state court lawsuit. (Travelers Mot., PageID 208; AGLIC Mot., PageID 224–25.) Encore acknowledges "the underlying settlement" but does not provide additional details about it. (ECF No. 22, PageID 242.) Travelers declares that "[t]he precise details of the settlement agreement are not known as Encore has not made them public, but there is no dispute that the only claim upon which damages could be awarded is the claim for violation of [O.R.C. § 2745.01]." (Travelers Mot., PageID 208.) Encore did not contest this characterization in its response. (*See* ECF No. 22.) The state court lawsuit's docket reflects that Encore has been dismissed as a party. Dismiss as to Certain Parties, *Shaffer v. Encore Industries, Inc.*, Franklin C.P. No. 22CV007990 (Mar. 4, 2024).

4

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

Encore argues the Insurers are obligated to indemnify it for its liabilities emerging from the Shaffer family's underlying state court lawsuit against Encore. The Shaffer family's underlying lawsuit is brought under the laws of the state of Ohio. (*See* State Compl., ¶ 98–99.) As a federal court exercising its diversity jurisdiction over Ohio state law claims, this Court is required to follow

substantive Ohio law as interpreted by the Ohio Supreme Court. *See Nice v. Wheeling Pittsburgh Steel Corp.*, 619 F. Supp. 2d 487, 490 (S.D. Ohio 2008).

### I. Declaratory Judgment Act

Encore asks this Court for declaratory judgment under the Declaratory Judgment Act, 22 U.S.C. § 2201, that the Insurers are obligated to indemnify it for "all sums it becomes obligated to pay through judgment, settlement, or otherwise, as a result of the" underlying state court lawsuit. (Fed. Compl., ¶¶ 37–38.) A district court has discretion whether to entertain an action under the Act, "even when that the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Sixth Circuit has identified factors for this Court to consider when determining whether to exercise its discretion (the "*Grand Trunk* factors"):

> "(1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

The suitability of this Court exercising its discretion over Encore's claim is clear. It is uncontested that whether the Insurers are obligated to indemnify Encore entirely depends on the meaning of O.R.C. § 2745.01 and how it relates to the relevant insurance policies. There is no evidence that Encore seeks declaratory judgment for strategic procedural positioning. Given that this Court has diversity jurisdiction over the case and adheres to Ohio case law in interpreting O.R.C. § 2745.01, there is little risk of jurisdictional friction. Resolution in this Court is a proper and effective remedy, and the parties do not suggest an alternative remedy. The Court thus

entertains the action.

## II. Encore's Arguments Regarding O.R.C. § 2745.01

Under Ohio's worker compensation system, "[e]mployees receive guaranteed compensation for injuries arising out of their employment, regardless of fault," and "in return, employees waive the right to bring tort actions against their employers for workplace injuries." *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 601 (6th Cir. 2013). Thus, generally, workers compensation benefits are an exclusive remedy for injured employees. *Id.* (citing *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 927 N.E.2d 1092, 1108 (Ohio 2010)). The exclusivity of this remedy is subject to an exception for an employer's intentional torts, codified at O.R.C. § 2745.01.

Although the full details of Encore's obligations relating to the settlement of the underlying lawsuit against it are unknown, the parties do not dispute that the only actionable claim against Encore in that suit arose under O.R.C. § 2745.01. (*See* Encore Mot., PageID 182–84; Travelers Mot., PageID 206; AGLIC Mot., PageID 228.) O.R.C. § 2745.01 provides, in pertinent part:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

Encore's indemnification argument focuses on O.R.C. § 2745.01's various iterations of "intent" and how they relate to the Insurers' policies. It argues that the precise type of "intent"

7

required for liability under the statute matters because the Insurers are excused from indemnifying Encore in the underlying lawsuit only if Encore's liability arises from an employee's "bodily injury *directly intended* by the insured." (Fed. Compl., ¶ 27; Travelers Policy, PageID 31.) In Encore's view, it could be held liable under § 2745.01 without "directly intending" bodily injury to another, and, therefore, the Insurers are not excused from indemnifying Encore in the underlying lawsuit.

Encore argues an employer can be liable under § 2745.01 without "directly intending" bodily injury in two ways: first, under the "substantially certain" part of O.R.C. § 2745.01(A) (as further defined in § 2745.01(B)), and second, under the rebuttable presumption provided for in § 2745.01(C). The Court considers these arguments in turn, and it disagrees with Encore on both fronts.

### a. Encore's "Substantially Certain" Argument Under O.R.C. § 2745.01(A), (B)

When an employee is injured, an employer can be liable for intentional torts against the employee if the employer acts "with the belief that the injury was substantially certain to occur." O.R.C. § 2745.01(A). The statute defines "substantially certain" to mean "that an employer acts with *deliberate intent* to cause an employee to suffer an injury, a disease, a condition, or death." O.R.C. § 2745.01(B) (emphasis added). Encore argues that because the statute uses "intent to injure another" as one way to hold an employer liable for an intentional tort, and separately provides for employer liability when it acts with "deliberate intent" under this "substantially certain" test, the two descriptions of "intent" must mean different things. (Encore Mot., PageID 189–90; 197.) It relies, in part, on arguments that "substantially certain" injury liability historically differed from "intent to injure" liability under common law. Further, it argues that the statute's use of "deliberate intent" is different than the "direct intent" that triggers the exclusion in the Insurers' policies. (*Id.*) Under Ohio Supreme Court and Sixth Circuit case law, Encore's arguments lack

8

merit.

### i. History of Employer Intentional Torts in Ohio

Historically, Ohio's intentional tort exception to an employer's liability to employees emerged from common law. *Rudisill*, 709 F.3d at 602. The exception "came to encompass two distinct kinds of intentional torts: (1) those where the tortfeasor acts with the deliberate intent to cause an injury, and (2) those where the tortfeasor believes that his acts are 'substantially certain' to result in an injury even though he does not intend to cause the specific injury that actually occurred." *Id.* (citing *Jones v. VIP Dev. Co.*, 472 N.E.2d 1046, 1047 (1984)). The Ohio Supreme Court described the first type of liability as "direct intent" liability and described the second type as "inferred intent" liability. *See Harasyn v. Normandy Metals, Inc.*, 551 N.E.2d 962, 965 (Ohio 1990) ("In the case of a 'direct intent' tort, the presence of insurance would encourage those who deliberately harm another. In torts where intent is inferred from "substantial certainty" of injury, the presence of insurance has less effect on the tortfeasor's actions[.]").

When the Ohio General Assembly codified employer liability for intentional torts by enacting O.R.C. § 2745.01 in 2005, however, it "significantly limit[ed] the scope of the common-law exception" by injecting a "deliberate intent [to injure]" requirement into the definition of "substantially certain." *Rudisill* at 602–03; O.R.C. § 2745.01(A) and (B). "So what appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same." *Rudisill* at 603. Essentially, the General Assembly eliminated the "substantially certain" path to employer intentional tort liability, as it was traditionally understood, and collapsed it into the "intent to injure" path. *See id.* And this change in law was deliberate—the Ohio Supreme Court has held that the General Assembly's use of "deliberate intent" in the definition of "substantially certain" "is not the result of a scrivener's error." *Houdek v. ThyssenKrupp Materials N.A., Inc.*,

9

983 N.E.2d 1253, 1258 (Ohio 2012). Thus, under both the "intent to injure" and "substantially certain" paths to liability (insofar as they are even distinct paths), an employer cannot be liable without a finding that it acted with the "specific intent" to injure another. *Kaminski v. Metal & Wire Prods. Co.*, 927 N.E.2d 1066, 1079 (Ohio 2010); *Stetter*, 927 N.E.2d at 1099–1100; *see also Houdek* at 1258 ("[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system.").

Encore argues that, regardless of the "deliberate intent" definition imbued into the "substantially certain" path to employer liability, O.R.C. § 2745.01(A) still contemplates two different types of intent: "direct intent," as under the "with the intent to injure" path; and "inferred intent," as under the "substantially certain" path. (Encore Mot., PageID 196.) But with § 2745.01, the General Assembly essentially eliminated "inferred intent" employer liability under the statute's "substantially certain" path to liability by defining it to require "deliberate intent." *See Kaminski*, 927 N.E.2d at 1079. The Ohio Supreme Court's holdings that the statute requires "specific intent [to injure]" under either path forecloses Encore's argument regarding "direct" vs "inferred" intent. *See id.*; *Stetter*, 927 N.E.2d at 1099–1100; *Houdek*, 983 N.E.2d at 1258.

### ii.  Application of O.R.C. § 2745.01 to the Insurers' Policies

Still, Encore argues that the "specific intent" required under the statute differs from the "direct intent" that triggers the coverage exclusion in its insurance policies. (Encore Mot., PageID 189–91.) But for the purposes of § 2745.01, the use of "specific intent" and "direct intent" is a distinction without a difference. Traditionally, "specific intent" was a legal term of art that contrasted with "general intent": generally, in the criminal law context, "'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely

10

with the concept of general intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980). But courts have moved away from this distinction and "toward a more specifically defined hierarchy of culpable mental states." *Dixon v. United States*, 548 U.S. 1, 7 (2006). The specific-versus-general intent dichotomy is essentially absent in modern Ohio civil law.

Regardless, Ohio case law on O.R.C. § 2745.01 indicates that trying to drive a wedge between "specific intent" and similar terms like "direct intent" and "deliberate intent" is splitting hairs. As discussed earlier, "direct intent" torts were traditionally contrasted with "inferred intent" torts. *Harasyn v. Normandy Metals, Inc.*, 551 N.E.2d 962, 964 (Ohio 1990). In *Kaminski*, the Ohio Supreme Court held that "[b]y enacting R.C. 2745.01, the General Assembly sought to statutorily narrow that common-law definition to 'direct intent' torts only." *Kaminski*, 927 N.E.2d at 1085 (citation omitted). Later in that opinion, the Court held that "specific intent [to injure]" is always required to prove employer liability for intentional torts under § 2745.01. The clear takeaway from *Kaminski* and the other cases on § 2745.01 is that for an employer to be liable under the statute, an employer must act with the specific intent to injure another. The Ohio Supreme Court has described the required intent as "specific intent," "deliberate intent," and "direct intent," all terms that mean the same thing for the purposes of the statute. *See Kaminski*, 927 N.E.2d at 1079–80, 1085, 1089; *Stetter*, 927 N.E.2d at 1099–1100; *Houdek*, 983 N.E.2d 1253 at 1258.

Ultimately, then, if an employer is held liable under § 2745.01(A) and (B), the employer must have acted with the direct intent, or its essential equivalent, to cause bodily injury. Accordingly, the "directly intended" exclusion in Encore's insurance policies applies, and the Insurers are not obligated to indemnify Encore for any liabilities arising from § 2745.01(A) and (B).

11

### b. Encore's Rebuttable Presumption Argument Under O.R.C. § 2745.01(C)

O.R.C. § 2745.01(C) provides for a rebuttable presumption of an employer's intent to injure:

> Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed **with intent to injure another** if an injury or an occupational disease or condition occurs as a direct result.

O.R.C. § 2745.01(C) (emphasis added). In the underlying lawsuit, the Shaffer family alleged that "[t]here was a deliberate removal by Encore Plastics of an equipment safety guard which creates a rebuttable presumption under Ohio law that the removal was committed with intent to injure Mr. Shaffer." (State Compl., ¶ 24.) They added, "[t]his specific factual scenario creates a rebuttable presumption of intent to injure without direct evidence under Ohio law, for which [E]ncore has no immunity." (*Id.*) Therefore, the underlying lawsuit relied, in part, on O.R.C. § 2745.01(C)'s rebuttable presumption of intent to harm.

Encore argues that this part of the statute exposes an employer to liability for conduct less than the "direct intent" to injure that triggers the Insurers' coverage exclusion. Accordingly, Encore contends that the Insurers are not excluded from indemnifying it because its liabilities may have arisen under § 2745.01(C).

In *Kaminski*, the Ohio Supreme Court seemed to caveat its holding about the statute's "specific intent" requirement by stating that an employer can be liable for intentional torts under the statute "only when an employer acts with specific intent to cause an injury, *subject to subsections (C) and (D)*." *Kaminski*, 927 N.E.2d at 1079 (emphasis added) (Subsection (D) bars the statute's applicability to civil rights claims and is irrelevant to this case.). After *Kaminski*, though, the Ohio Supreme Court held that even when a rebuttable presumption of intent to injure

12

is established under § 2745.01(C), the employer "cannot be legally obligated to pay damages for an employer intentional tort except based upon a finding that they acted with the intent to injure." *Hoyle v. DTJ Ents., Inc.*, 36 N.E.3d 122, 131 (Ohio 2015).

In *Hoyle*, a defendant-employer was an insured party under an insurance policy that "expressly exclude[d] coverage for 'liability for acts committed by or at the direction of an insured with the deliberate intent to injure.'" *Hoyle* at 128 (quoting the relevant insurance policy). The insurer sought a declaratory judgment that it had no obligation to indemnify the defendant-employer for intentional tort liabilities arising under O.R.C. § 2745.01, just like in the present case. The Ohio Supreme Court upheld a trial court's grant of summary judgment to the insurer on its declaratory judgment claim, holding that "whether [the plaintiff] proves [the required] intent with direct evidence under R.C. 2745.01(A) *or with an unrebutted presumption under R.C. 2745.01(C)*, intent to injure is an essential element of his claim for an employer intentional tort." *Id.* at 131 (emphasis added). "In any case, liability on [the plaintiff's] employer-intentional-tort claim will be based upon a finding that [the defendants] acted with intent to injure [the plaintiff]." *Id.* At the end of the opinion, the Court further held that "an insurance provision that excludes from coverage liability for an insured's act committed with the *deliberate intent* to injure an employee precludes coverage for employer intentional torts." *Id.* at 133 (emphasis added). As discussed above, there is no meaningful distinction between "deliberate intent" and "direct intent" for the purposes of O.R.C. § 2745.01.

Thus, even if an employer is held liable under the statute after the plaintiff first raises a rebuttable presumption of the employer's intent to injure under O.R.C. § 2745.01(C), the statute still requires an ultimate finding of fact of "intent to injure" under O.R.C. § 2745.01(A) and (B). And as discussed above, the Ohio Supreme Court has repeatedly interpreted the statute to

13

ultimately require "specific intent" to injure for an employer to be held liable. *See Kaminski*, 927 N.E.2d at 1079–80, 1085, 1089; *Stetter*, 927 N.E.2d at 1099–1100; *Houdek*, 983 N.E.2d 1253 at 1258. That requirement does not change merely because the factfinder arrives at that finding after the party raising the claim first establishes a rebuttable presumption of intent to injure under § 2745(C). *See Hoyle*, 36 N.E.3d at 131.

*Stetter*, *Kaminski*, *Houdek*, and (especially) *Hoyle* make clear that Encore cannot prevail on its argument that it could be liable under O.R.C. § 2745.01 for anything less than a finding that it acted with "direct intent" to cause bodily injury. Even to the extent the Shaffer family's § 2745.01 claim in the underlying lawsuit relied on the rebuttable presumption provided for in § 2745.01(C), the same ultimate finding of "specific intent [to injure]" is required. And as this Court has emphasized in this Opinion and Order, there is no daylight between terms like "specific intent," "deliberate intent," and "direct intent" for the purposes of O.R.C. § 2745.01. Accordingly, the "direct intent" exclusion applies, and the Insurers are not required to indemnify Encore for its liabilities arising under O.R.C. § 2745.01, even if it could be held liable by way of the rebuttable presumption under § 2745.01(C).

### c. Encore's Ancillary Arguments

In addition to its statutory arguments, Encore raises ancillary points in support of its overall claim that the Insurers must indemnify it in the underlying lawsuit.

First, it compares the Travelers' default exclusion for employer liability coverage to the Ohio-specific exclusion that replaced it for the Travelers Policy under which Encore is insured. (Encore Mot., PageID 192–97.) The default language excludes Travelers from indemnifying the insured for liabilities arising from "[b]odily injury intentionally caused or aggravated by [the insured]." (Travelers Policy, PageID 22.) The Ohio-specific exclusion replaces this language and

14

instead excludes coverage for "bodily injury directly intended by the insured." (*Id.*, PageID 31.) Encore argues the modified exclusion language indicates that the Insurers intended to exclude only liabilities arising from direct intent torts, rather than those arising from inferred intent torts (i.e., arising under "substantially certain" liability) or from a rebuttable presumption, like the one provided for in O.R.C. § 2745,01(C). (Encore Mot., PageID 193.) It also compares the Ohio-specific exclusion to other state-specific exclusions, noting that other exclusions do not include the "direct" modifier. (*Id.*, PageID 194.)

But Encore's arguments on this point do not withstand the above analysis. Regardless of the language the Insurers used for other state-specific exclusions, the language the Insurers chose for the Ohio-specific provision excludes all employer intentional tort liabilities under O.R.C. § 2745.01 under Ohio Supreme Court authority. Even assuming the Insurers intended to cover Encore's intentional tort liabilities arising under inferred intent/"substantially certain" tort liability but not to cover its direct intent tort liability, that difference does not matter because, as discussed above, O.R.C. § 2745.01 collapses the two standards and essentially eliminates inferred intent statutory liability for an employer's intentional torts. In other words, Encore argues that the Ohio-specific exclusion requires indemnification for a type of employer intentional tort liability that does not exist under O.R.C. § 2745.01. Therefore, even if true, it would not matter.

Second, Encore argues that a reasonable person can only interpret the Ohio-specific exclusion in one way—to exclude coverage only of an employer's direct intent torts—and thus the exclusion should be construed not to cover inferred intent torts. (Encore Mot., PageID 199–200 (citing *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001) ("In order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language

15

in question." (citation omitted) (cleaned up))).) Even accepting that view, though, the analysis in the previous paragraph still applies. It does not matter if the policy can only reasonably be interpreted to exclude coverage for liabilities arising from an employer's directly intended torts because O.R.C. § 2745.01 *always* requires a finding that the employer acted with the specific (i.e. direct) intent to injure. *See Kaminski*, 927 N.E.2d at 1079–80, 1085, 1089; *Stetter*, 927 N.E.2d at 1099–1100; *Houdek*, 983 N.E.2d 1253 at 1258.

Accordingly, there is no possible path for Encore's declaratory judgment claim to succeed. Even accepting the facts plead by Encore as true, the Travelers Policy and the AGLIC Policy do not require indemnification for Encore's employer intentional tort liabilities in the underlying state court lawsuit that arise under O.R.C. § 2745.01. Therefore, Encore's declaratory judgment claim is **DISMISSED WITH PREJUDICE**.

### III.  Encore's Additional Claims

Travelers argues that if the Court grants judgment on the pleadings to Insurers on Encore's declaratory judgment claim, then it should also grant the Insurers judgment on the pleadings for Encore's breach of contract and bad faith claims. (Travelers Mot., PageID 218–19.) Encore does not dispute that the breach of contract claim rises and falls with the declaratory judgment claim, but it argues that its bad faith claim should continue regardless. (ECF No. 22, PageID 262–63.)

Encore's breach of contract claim depends on its declaratory judgment claim that the Insurers were required to indemnify it in the underlying state court lawsuit. (Fed. Compl., ¶¶ 42–48.) The Court rejected Encore's arguments on that claim above in this Opinion and Order and dismissed Encore's declaratory judgment claim accordingly. Therefore, Encore's breach of contract claim is also **DISMISSED WITH PREJUDICE**.

In its third and final claim, Encore alleges the Insurers acted in bad faith because they

"failed to exercise good faith in the handling of Encore's claim relating to the [underlying lawsuit] because [the Insurers'] refusal to acknowledge [their] duty to indemnify Encore is not predicated on circumstances that furnish reasonable justification therefore." (Fed. Compl., ¶¶ 49–54.) Under Ohio law, to prove a bad faith claim based on an insurer's refusal to indemnify an insured, "'[a]n insured must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious and without reasonable justification.'" *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 653 (6th Cir. 2021) (quoting *Spremulli's Am. Serv. v. Cincinnati Ins. Co.*, 632 N.E.2d 599, 601 (8th Dist. Ohio Ct. App. 1992)). Encore pleads facts to that end, alleging that the Insurers "acted arbitrarily, capriciously, and in bad faith by refusing to consider statutory provisions and case law that contradicts the application of" the Ohio-specific conclusion, among other facts. (Fed. Compl., ¶ 53.) Accordingly, Encore argues it has plead a *prima facie* case of bad faith and that its claim must survive past this stage despite the dismissal of its other two claims. (ECF No. 22, PageID 262–63 (citing *Lyons v. Tecumseh Loc. Sch. Dist.*, 2023 WL 6442825 (S.D. Ohio Oct. 3, 2023) (Rose, J.) ("To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." (citation omitted))).)

In a similar case, the Sixth Circuit held that a bad faith claim based on an insurer's denial of coverage was appropriately dismissed given that the underlying coverage question was resolved in the insurer's favor. *See Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 653 (6th Cir. 2021). In *Dakota Girls*, the Sixth Circuit affirmed a district court's dismissal of a declaratory judgment claim where the plaintiff-employer argued that the defendant-insurer improperly refused to cover plaintiff's losses in violation of its insurance policy. *Id.* at 647–48, 652. The Circuit Court determined that "the [plaintiff] has never shown that it even had coverage,

17

much less that [the defendant's] agents knew it had coverage or that coverage was so obvious it could not have been reasonably denied." *Id.* at 653. Accordingly, Court determined that "[o]ur ruling [on the coverage claim] also disposes of [the plaintiff's] claim that [the defendant-insurer's] denial of coverage was done in bad faith," and it affirmed the decision to dismiss the claim. *Id.*

*Dakota Girls* controls and precludes Encore's bad faith claim in this case. Because this Court concludes that Encore's declaratory judgment claim fails as a matter of law, it necessarily follows that Encore's bad faith claim fails as well. Like the plaintiff-employer in *Dakota Girls*, Encore has not shown that it is entitled to indemnification by the Insurers, let alone that refusing to indemnify it was obviously unreasonable. *See id.* Accordingly, Encore's bad faith claim against the Insurers is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **DENIES** Encore's Motion for Judgment on the Pleadings (ECF No. 19), **GRANTS** Travelers' Cross Motion for Judgment on the Pleadings (ECF No. 20), and **GRANTS** AGLIC's Cross Motion for Judgment on the Pleadings (ECF No. 21). Encore's claims for declaratory judgment, breach of contract, and bad faith are **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to enter judgment and terminate this case on the Court's docket.

**IT IS SO ORDERED.**

<u>1/17/2025</u>                               <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                    **EDMUND A. SARGUS, JR.**
                                            **UNITED STATES DISTRICT JUDGE**